Ms. McKee, would you announce our final case for argument today? Yes, Your Honor. Case number 25-1265 from the District of Minnesota, General Star Indemnity v. ASI, with case 25-1284 from the District of Minnesota, General Star Indemnity v. Tory Quest, et al. Mr. Weisbrot. May it please the Court, Counsel. This Court should reverse. Several key principles are not at issue in this appeal. First, Minnesota courts give unambiguous policy terms their clear and plain meaning. Second, a policy term is ambiguous if it's susceptible of more than one interpretation. If a policy term is ambiguous, courts construe the policy language against the insurer. And the most important principle at issue in this appeal is that a policy term is read from the perspective of a layperson, not a lawyer. The District Court erred in granting the judgment on the pleadings for the insurance carrier in this case because it failed to read the insurance policy at issue from the perspective of a layperson rather than a lawyer. It's undisputed what the policy says. The policy says that the insurer is obligated to provide coverage for injuries arising out of malicious prosecution. The District Court read that list of terms included in that provision in addition to malicious prosecution, applied the expressio unius canon, and concluded that coverage did not exist for an abusive process. We think that was a problem with the Court's decision because no layperson could be expected to, A, draw the conclusion that a claim for abusive process is not included within the scope of malicious prosecution based on the text itself, and second, because no layperson would reasonably understand the distinction to the extent the distinction exists at all between malicious prosecution and abusive process. As the Ninth Circuit said in Lunsford, the case that we cited below, even lawyers have difficulty drawing that distinction between abusive process. And in a case decided by the Minnesota Court of Appeals, cited in Judge Thunheim's ruling below, Dunham v. Rohr, the Court drew what I believe amounts to a razor-thin distinction between abusive process and malicious prosecution. The Court in that case said that the distinction is that a malicious prosecution consists in maliciously causing process to be issued, whereas an abusive process is the employment of legal process for some purpose other than that which is intended by the law. Well, that was clumsy, but I'll give you a less razor-thin, which is prosecution means bringing an action, and you do it with malice. An abusive process can include that, but it doesn't necessarily include that. It does not include defending an action based on sham, false reasons for defending it. And I'm not saying that that's true. I'm just saying that that's a difference. And I agree with you as a general proposition, Your Honor, and that brings us back to another principle that I failed to mention in my intro, which is that a carrier in these circumstances has a duty to defend unless it shows that all parts of the claim are outside the scope of coverage. And based on that razor-thin distinction that the Minnesota Court of Appeals has recognized, no layperson, no ordinary reader, no lawyer could conclude that all parts of the abusive process claim are outside the scope of coverage. So we think that the district court erred in that respect in reading the text of the provision as suggesting that abusive process is outside the scope of malicious prosecution. There appears to be no question in this case that there are sufficient factual allegations, if not a legal claim, to assert a malicious prosecution claim, even though the claim itself wasn't pleaded. Minnesota courts look not only at the claims pleaded, but also the facts alleged. Well, on that point, I mean, if you look at the substance, this looks more like an abusive process. It's not one that crosses over to malicious prosecution because I don't understand any cause of action to actually be brought here. Your Honor, I think you get to the point about how broadly we should interpret the phrase prosecution. We all agree in this case that there's just one claim that falls within the policy period. It's the sham intervention, so to speak, in Tennessee. And that was an intervention by the insured. That is sufficient to bring it within the scope of malicious prosecution. It is a use of the process, the intervention itself. And so unless the Court were to conclude, and I'll admit, Your Honor, we don't address this issue in our briefing, but my recollection as a general proposition of the law is that process doesn't necessarily mean the institution of a lawsuit. It could be other uses of the process. And so we think that that is sufficient to bring it within the scope of malicious prosecution. With respect to Judge Thunheim's suggestion that there's a national trend against coverage, I don't know whether national trend is a valid interpretive principle, but I don't think that any ordinary insured would go and look at case law, hire a lawyer to tell them what the trend in case law is, to the extent that the trend exists anyway. Lunsford has been on the books for more than 30 years now in the Ninth Circuit, and despite suggestions otherwise from General Starr and the District Court, no California court has ever backed away from that. No Minnesota court has ever reached the question. And so to the extent this Court has doubts, we have filed a motion to certify the question to the Minnesota Supreme Court. We think it would be an appropriate use of the certification procedure in this case. No state court of last resort has ever addressed this question. We believe it would bring certainty and consistency to the law, and we think it would be appropriate in this case to certify and allow the Minnesota Supreme Court to answer the question. And so for those reasons, Your Honors, we would ask that you reverse and remand this case, and I'll reserve the remainder of my time for rebuttal. Very well. Good afternoon, Your Honors. Stephen Weisbrod for ASI. We are the plaintiffs in the underlying case. We're defended here. I'd like to begin by addressing Judge Strass' question about whether there are facts to support a malicious prosecution claim, whether a proceeding was initiated. The answer is yes. There were three in the complaint, one during the policy period. The one that was in Tennessee was something that was initially initiated by a company called Dollar Empire, but funded by the defendants here. They were not a party. They were not defending anything. They just moved to intervene. That is an initiation of an action. Counterclaims have always been treated as matters that can be subject to malicious prosecution. But more importantly, Your Honors, the question of whether abuse of process and malicious prosecution is the same for coverage purposes is not something on which this case rises or falls. We should win that argument. But if you look at both California law and Minnesota law, the question is whether there were facts in the complaint that arguably could support a claim. The question is not whether each and every element was asserted. In fact, an insurance company is obligated to defend a policyholder precisely so that a policyholder may assert motions or defend. Imperfect claims, meritless claims still must be defended. In addition, if you look at the coverage clause, and I'd like to go through it briefly, what you will see is that there are several types of offenses listed, and they are obviously not intended to be a literal exhaustive list. Not only is it reasonable to interpret it as not a literal exhaustive list, it is unreasonable to assert otherwise. Start with the first one, false arrest, detention, or imprisonment. Does that mean that in states that call the torts seizures or custody or wrongful incarceration or kidnap, that there's no coverage? Of course not. The fact that states vary in the names they use or in the elements of the torts does not mean that there's no coverage. You use a layperson's analysis, not a lawyer's analysis. In the case of malicious prosecution, one of the cases cited by General Starr illustrates this point very well. It's the Nomodetects 10th Circuit case, Nomodetects. It didn't make it into the table of authorities, but it's in the brief. And I recommend it because it talks about how malicious prosecution actually varies by name and element in many different states. So in Pennsylvania, there's the Dragonetti statute. Of course, in New Mexico, there's the malicious abuse of process, which combines the two torts. There's vexatious litigation in Connecticut, malicious use of process in Maryland, wrongful use of civil procedure in Connecticut, wrongful civil prosecution referenced in Prosser and Keaton and in the restatement. All of these are different names for similar but not necessarily identical causes of action. And a policy that is supposed to protect policyholders across all states in the United States, throughout North America and on abuse of process claims if they use electronic means internationally, those cannot be reasonably construed as just limiting coverage to whatever happens to satisfy the Minnesota elements for that tort. If you go through the list of offenses that are covered by this clause, you'll see that almost everyone has something that could be synonymous or vary a little bit from state to state, wrongful eviction, entry or invasion of property. That could be called trespass elsewhere or removal or rejection or conversion. Those things all would be covered even if they are not literally asserted. Now, then the question is, do you have to actually assert the claim by name if it's available in the state? There's no law that says that. And I would call the Court's attention to General Casualty Company of Wisconsin v. Wozniak. We should have emphasized this decision much more in our briefs, honestly, because the Court there was confronted with the question of whether infringement of trademark was covered when it wasn't listed. And the Minnesota Supreme Court said, yes, it was, because basically two reasons, or three, but one of them is it covered damages that arise out of wrongdoing, which this could be, and it had to be a reasonable interpretation. And the Court is not bound by the nomenclature used in the underlying litigation. This is in the Wozniak case for the Minnesota Supreme Court. Now, the California law, we believe, should apply because this policy references California. It is unreasonable to have different outcomes in Iowa or California. There's actually an almost identical case pending in Iowa right now involving these parties. It does not make sense to have Minnesota law apply rather than California, and we agree that. Counsel, I wanted to ask you about the disqualification motion, just to have you address it. Why should the panel not be concerned about the potential for disqualification here? There are several reasons that we have outlined in our brief. Number one, the defendants sat on it for years. I disclosed everything personally. That was a basis for it. Number two, my law firm and its affiliate did not acquire a claim. There is a huge difference between acquiring a claim, which is addressed by the rules of professional conduct, and acquiring stock in a company, which is what we did. Number three, there's absolutely no conflict of interest. There is no party that is not aligned. And Judge Shultz relied on those in denying the motion. We believe this is abusive by the other side.  Good morning, Your Honors. May it please the Court, Cara Duffield for General Star Indemnity Company, the appellee. The district court correctly held that the policies that General Star issued to Toy Quest do not afford coverage for the underlying ASI action. The Court's ruling had two parts. First, it held that the policies' coverage for malicious prosecution unambiguously does not include coverage for abusive process. Couldn't it, though? I mean, if it really was, in essence, a malicious prosecution, you're bringing in action, and it's just labeled abusive process, I don't understand it. The substance of the claim is malicious prosecution. Why wouldn't it be covered? So this is the key point that was addressed by counsel in their opening argument, and I think it's an important one. So essentially, first of all, we very much disagree that the underlying complaint here actually states a claim, a well-pleaded claim, for malicious prosecution. The element that both of them overlooked is the element that's missing from the Middle District of Tennessee case, and that is termination in the plaintiff's favor. That case is still going on. What happened is that Toy Quest intervened. There was an attempt by ASI to garnish certain amounts. Toy Quest intervened. That motion was allowed. And then the court, the Middle District of Tennessee, stayed that case pending the outcome of the underlying ASI action. It definitely has not terminated against the intervener in a way that would give rise to a malicious prosecution case. And I think overarching the problem that I find with... Wouldn't you still have a duty to defend, even though it hadn't terminated? So here is the problem that I see with the appellant's position. It is true, and I will grant them, under most States' law, right, if you're not an insurance company, you shouldn't look just to the legal labels, right? It's undisputed here that the complaint in the ASI action includes account for abusive process, doesn't include anything that is labeled malicious prosecution. I will grant them that that should not be dispositive, right? If there are facts in the complaint that would give rise to account for malicious prosecution, I think most insurers would defend. But here we don't have either. We don't have account called malicious prosecution, and we don't have well-pleaded facts that make out account for malicious prosecution. So I would submit to you in that case, what's an insurance company do? I think both of them are saying, well, it's close enough. But that's nothing to guide a claim person who has a policy and has an underlying complaint, and they look through and they say, I don't see anything labeled malicious prosecution. I don't see anything that even, you know, factually would allege malicious prosecution. And I think under the law of both California and Minnesota, right, an insurance company, yes, the duty to defend is broad. But you don't have a duty to invent claims. You don't have a duty to hypothesize future amendments. If those amendments come, then they come and you analyze that. I think they would say, though, that the interposition or putting in a false security interest is kind of like a counterclaim, which is like a malicious prosecution, maybe. I mean, that's at least how I understood their argument to be. So a couple of things. Getting back to the key point that the insureds raised, right, the insureds say over and over again, you look at these policies from the standpoint of a layperson, not a lawyer. First of all, I think it's undisputed that under Minnesota law, malicious prosecution and abusive process are two separate torts. They have separate elements, and I don't think they're disputing that. They're simply saying they're pretty close, right? The problem with the layperson standard here is I don't think that they are really thinking about a layperson, because a layperson with no legal training wouldn't think about malicious prosecution and how that's related to abusive process and does that include counterclaims and does that include interventions, engarnishment proceedings. I think what they are positing is not a layperson, but rather either a bad lawyer or a layperson with just enough legal training to be dangerous, right? But this is not, and this is the point I think that appellants have raised. They've said, well, malicious prosecution doesn't actually have a common meaning. So their conclusion is, well, it's ambiguous and it must be construed in favor of coverage. And I think that there's no tenant of Minnesota law or California law, for that matter, which is there's no common layperson meaning, so all bets are off and there must be coverage. Rather, both states. I'm not sure that's right. I mean, I wanted to follow you to the end of your argument, but just from the sound of it, malicious prosecution is kind of what I said earlier, which is bringing an action in bad faith, right? I mean, that's what it is. And I'm trying to figure out, like, that's what a common person would think, and so I'm trying to figure out if what they did in Tennessee could resemble that in any way, and maybe the answer is no. I think the claim in this case, the underlying ASI action is our insureds, Toy Quest and the three individuals, serially evaded, they evaded legal actions in order to avoid paying a judgment. I don't, from that, and again, this is the difficulty of viewing this from the perspective of a legal person who I think wouldn't have any intuitions about malicious prosecution other than the words malicious prosecution or abusive process. I don't think there's anything about the notion of defendants evading judgment that would lead them to say, oh, there must be a malicious prosecution claim. So I think just from a plain language standpoint, again, we don't view malicious prosecution as something that would lead a reasonable layperson with no legal training to say, oh, there must be coverage here because, you know, you opposed, essentially you opposed, Toy Quest opposed ASI collecting money from a third party. There's a couple of other points that I want to raise, and obviously the key point here is whether the policy includes coverage for abusive process when it says only malicious prosecution. We have both cited a lot of cases. They're not decided under Minnesota law, but there's a number of these cases nationwide, and one of the arguments ahead of me, counsel was very ably able to sort of top them up into columns. I think if you look at the cases that both sides have cited, there are obviously cases that take the view which we espouse, which is malicious prosecution and abusive process are separate things, plain text. You look at the expressio unis canon of construction and you say there's no coverage. There are cases that appellants cite which say, well, we think that the term, you know, malicious prosecution is ambiguous, so it should also include abusive process. I think what's helpful is to look at those cases one layer down and try to see that some of them, they do look at the state law and say, okay, are these torts sufficiently separate under the state law? And then the second thing those cases do is they look at the underlying complaint and say, would this underlying complaint actually state a claim for malicious prosecution even if it is not denominated as malicious prosecution? And here I think both of those factors favor General Starr because, again, under Minnesota law, which there's no dispute that governs the ASI action, those two torts are separate things. This is Your Honor's decision in Nygard, right? They are two separate torts. With respect to what the underlying complaint alleges, this underlying complaint doesn't allege a claim for malicious prosecution. And I would go one step further and say this case is particular in its nature in that ASI, the plaintiff in the underlying case, has been a party to this coverage case for the duration. And I think you could say it is either a mark of there being no coverage or it is a mark of counsel being very honest that they have not tried to plead into coverage, right? If they would have amended their complaint in the underlying action and said, you know what, we want there to be a malicious prosecution count, too, I think General Starr would have been stuck. We would have had to defend. We would have had to work with defense counsel to get that case dismissed. They never did it. And I think that that is a clear admission that they recognize that the intervention into the Middle District of Tennessee case would not support a claim for malicious prosecution. So all of those factors. What is missing from that, the underlying complaint intervention, that makes it not a malicious prosecution? Other than you mentioned termination, and I'm not sure that gets you there, because I think you might have a duty to defend in that situation. What else is missing? Well, there's no allegation of a lack of probable cause. And I think the distinction between malicious prosecution and abusive process, right? Abusive process, malicious prosecution means you did not have probable cause to garnish those funds. Toy Quest certainly would say, those funds belong to us. They shouldn't have been garnished by ASI to satisfy a judgment by another company. I think what ASI is alleging, the reason they've brought this as abusive process, not you may have had a legitimate argument that ASI could not garnish those funds. But the reason you did it, you did it simply for delay, right? So I think that is and Mr. Weisbrot can certainly answer those questions. So we think that there's two elements missing from malicious prosecution. And again, against the backdrop of the plaintiff has been here, the plaintiff clearly, if ASI were arguing, we want to deprive Toy Quest of insurance coverage. We want to starve them of defense. We want to starve them of settlement so that they'll come to the table. Different question, right? But ASI has been saying there is coverage here, right? And the fact that they have not tried to amend their pleadings to assert that claim I think is very telling. The underlying action at this point is quite advanced. The parties have filed summary for amendment is closed. With respect to, again, the key issue, again, just to sort of recap, we think that there's four reasons why the district court, well, five. The district court, we believe, got it right because we think malicious prosecution and abusive process are separate and the policies only cover malicious prosecution. We think there's four key arguments as to why the insureds and ASI are incorrect, right, in their notion that the two are close enough, so there should be defense, right? And we've sort of run through all of these, but I just want to recap. The first is that they're not truly using a reasonable layperson standard. The second is that if, in fact, malicious prosecution has no common meaning, which the insureds advocate, then courts give it its technical meaning. Under both Minnesota law and California law, these are the cases we cited on pages 19 and 20 of our brief. Then you give it its legal meaning, and clearly they are not the same. The third is the issue we've spent some time on, which is whether or not the ASI action actually alleges, right, well-pleaded factual allegations to support a claim for malicious prosecution. We submit that it doesn't. The fourth issue is sort of looking at the cases nationwide, those that favor General Starr's position, those that favor the insured's position. It would be very easy, but probably not particularly persuasive for me to say, well, we have more and more recent cases, right? But I think if you look at them and what those cases are trying to analyze, I think that all of the factors here support General Starr in that the torts are separate, there's not well-pleaded allegations in the underlying action to support a claim for malicious prosecution, and there's extrinsic evidence of the plaintiff's intent here, which the court can look at as well. There is also a choice of law issue in this case. We think that the court, district court, got it right. The district court held that there's no conflict between Minnesota law and California law, and if there were, that Minnesota law would apply. We think that issue has been extensively briefed by both parties. There is also an issue of abstention that the insureds raised. The district court at the outset of the case held that it would not abstain from adjudicating this declaratory judgment action because there was no competing parallel state court proceeding. We think that's manifestly correct under the Eighth Circuit. The issue of abdication is something that has come up very recently. The appellants, the insureds, made that motion for the first time earlier this month, and the reply came in yesterday. We submit that that's very late. We think that, again, the law is sufficiently clear. This is not the Amazon case, Your Honor's heard earlier. It's not the — in their reply, the insureds maybe over the last 30 years, they found about a dozen in the insurance context. I think if you look at those cases, you will see that they generally include issues of more searching, public impact. A lot of them are uninsured motorist cases. So, again, we don't think that this case meets the standard for certification. Let me — did I understand you right, that if they had amended their pleading in the underlying case and called it malicious prosecution, did I understand you to say that you would have a duty to defend at that point? Your Honor, I actually — I actually believe that we would have. I think it would — an insurance company would be very — So is it just a matter of labels? No. I — no. So I think an insurance company all the time, insurance companies get complaints that have warrantless claims, but they are — they are denominated as claims that are covered, and an insurance company will defend those. The point that I am making is that not only was there not a claim denominated malicious prosecution in the underlying complaint, but the fact that the plaintiff has — knows, has been a party to this coverage case, knows what we're arguing about in this case, and in an exercise, I must presume, of honesty, has realized that he does not have a valid claim for malicious prosecution and has never tried to assert one in the underlying action, I think is very telling. Okay. Thank you. Thank you. This appeal has gotten into an issue that I hadn't necessarily anticipated talking about this morning, but I think one of the principles at issue in this case is the extent to which that label and conclusion, as Your Honor called it, matters. And what I would say is a label and conclusion is sufficient to trigger an insurer's duty to defend, but it's not necessary. Minnesota recognizes, California recognizes, that you look at the factual allegations in the complaint. Under Rule 8, at least by the text of Rule 8, there's no obligation to even plead causes of action. An insurance carrier has to look at the facts that are alleged, and the facts that are alleged in the underlying complaint clearly allege abuse of process, and they are sufficient to allege a malicious prosecution claim. The sham intervention in which my clients are alleged to have expired in Tennessee, Wellmax, the party that actually filed that intervention, withdrew its motion. And we would take the position that that is a favorable termination in the favor of ASI, the defendant in that action. And those facts are ably encapsulated on ASI's brief at page 7. They're summarized as the facts in the complaint. So we think that those factual allegations are sufficient to trigger General Starr's duty to defend under a malicious prosecution claim. I want to talk about this notion that General Starr raises that we sort of want to have it both ways with respect to this layperson inquiry. I would suggest that what General Starr is trying to do is weaponize that layperson inquiry. They're saying, well, you know, a bad lawyer or a lawyer would need to look at this and see it. No reasonable insured could understand what those distinctions mean. Well, that's not really fair to an insured who expects to have coverage to protect them against claims like malicious prosecution or abuse of process or all the other covered claims within the scope of the policy. And so we think that it turns that notion of a layperson inquiry on its head to take it and then use it against the insured to find a way to deny coverage. Finally, if this Court were to agree with us that the district court got the coverage question wrong, the Court would have to address the exclusion, the intellectual property rights exclusion. We don't think that applies. First, exclusions are to be narrowly construed. Second, literal but-for causation is not sufficient. There has to be a direct but-for causation. And finally, the — none of the insureds is manly. Manly is the party against which the Lanham Act judgment was entered way back in 2013. And none of the insureds is manly. And so it would be unfair to impute the acts of manly to the insureds in this case. Thank you, Your Honors. Thank you, Mr. Underwood. Mr. Weisbrot, you used your time, but I will give you a minute if you have something you want to respond to. Yes, thank you, Your Honors. Mr. Underwood is correct. We hit all three elements on the facts, if not on the label. Wellmax initiated — Wellmax had no valid security interest. Wellmax withdrew. On the question of whether technical meanings should be used, if you actually read the cases that were cited by General Starr, what you'll see is that in Seminus, the Court found that after discovery, the policyholder was using the term crop in a way that general laypeople used it. It did not use some specialized legal meaning. It rejected the suggestion to do that, even though Seminus was arguing for a narrow reading of an exclusion. In Universal Cable, the Court found that war did not apply to what Hamas was doing when Hamas was a terrorist organization, but not a government recognized by the United States. Again, an exclusion, I believe. If you are looking at cases involving coverage grants, as opposed to narrowly construed exclusions, what you will see is that courts reject legalistic interpretations of policies, and the Court should do so here. Thank you.